|UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| RUEBIN CLIFTON FLETCHER,<br><br>*Plaintiff*,<br><br>v.<br><br>OFFICER JOSEPH JACKSON,<br><br>*Defendant*. | Civil No. 1:23-cv-00406 (MSN/IDD) |

### MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Joseph Jackson's Motion to Dismiss (Dkt. 6). Plaintiff Ruebin Fletcher ("Plaintiff" or "Fletcher"), an inmate at Rappahannock Regional Jail ("RRJ"), brought the instant action against Defendant Officer Joseph Jackson ("Defendant" or "Jackson"), in his individual capacity, pursuant to 42 U.S.C. § 1983, alleging excessive force in violation of his Eighth Amendment rights. For the reasons that follow, the Motion to Dismiss will be GRANTED.

### I.   BACKGROUND[1]

On July 25, 2020, Fletcher was in his jail cell using a phone that was situated on a rolling cart. Compl. ¶ 7. While Fletcher was using the phone, Jackson suddenly unplugged the phone and instructed Fletcher to pass the phone to him through the slot of the cell door. *Id*. ¶ 8. Fletcher then handed the phone over to Jackson through the slot using his right hand and kept his hand resting in the same slot. *Id*. ¶ 9. Officer Eastwood, another RRJ correctional officer, came to the door of Fletcher's cell and began speaking with him. *Id*. ¶ 10. While Fletcher and Officer Eastwood were

---

[1] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of this motion. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

speaking, Jackson suddenly grabbed Fletcher's right hand without warning and crushed it "with such force that [Fletcher] sustained a serious injury to his right ring finger." *Id*. ¶ 11-13.

Fletcher alleges that at the time Jackson injured his hand, he was confined to his locked cell and "did not pose a threat to the safety of Officer Jackson or any other individual." *Id*. ¶ 16. As a result of Jackson's actions, Fletcher went to the medical unit immediately after the incident where the medical staff took an x-ray of his hand and determined that his right ring finger was fractured. *Id*. ¶ 17. Fletcher was then transported to a local emergency department where doctors performed surgery on his finger to repair the injury. *Id*. ¶ 18.

## II.   ANALYSIS

Jackson moves to dismiss Plaintiff's Eighth Amendment claim pursuant to 42 U.S.C. § 1983, on the following grounds: failure to state a claim, failure to exhaust administrative remedies, failure to timely file his constitutional claim, and Jackson's entitlement to sovereign and qualified immunity. To survive a Rule 12(b)(6) motion, Plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face" and "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Conclusory statements, however, are insufficient to state a claim for relief. *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

### A.   Statute of Limitations for a Section 1983 Claim

The statute of limitations for a Section 1983 claim is the statute of limitations of the most analogous state-law cause of action. *See D.A. Realestate Investment, LLC v. City of Norfolk*, 2023 WL 2637382, at *4 (E.D. Va. 2023). In Virginia, "that cause of action is a personal-injury suit,"

which has "a two-year limitations period." *Id.* Such a claim "accrues when the plaintiff knows or has reason to know of his injury." *Id.* Fletcher's Section 1983 claim for excessive force accrued on July 25, 2020, when the alleged incident occurred.

Defendant argues that Fletcher filed a complaint in the Stafford County Circuit Court only asserting a state law action for battery.[2] Fletcher alleges that the state court issued an "order granting [him] a voluntary nonsuit of his state court complaint . . . on September 28, 2022." Pl. Opp. at 12. Virginia law provides that if an "action" is nonsuited, "the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action . . . and the plaintiff may recommence his action within six months." Va. Code § 8.01-229(E)(3). In other words, the statute of limitations for Fletcher's nonsuited "action" was tolled for six months from the date of the nonsuit, which was September 28, 2022. Six months later, on March 27, 2023, Fletcher filed this lawsuit in federal court against the same Defendant, this time alleging only a Section 1983 claim for an Eighth Amendment violation. *See* Compl. at 3.

Defendant argues that "Plaintiff could have filed his battery claim along with a § 1983 claim in the state court, but he chose not to do so" and that Fletcher "cannot take advantage of the nonsuit tolling statute when his § 1983 claim was not party of the prior lawsuit." Def. Reply at 5. Defendant further argues that "only those claims that are pending at the time of the nonsuit are nonsuited and subject to tolling." *Id*. at 3-4. To support this proposition, Defendant relies on *Allen v. Loudon County Sanitation Authority*, a 2009 unpublished case from the Loudon Circuit Court. *Id*.

But the tolling statue speaks in terms of "action[s]." Va. Code § 8.01-229(E)(3). Under Virginia law, an "action" refers to claims arising from "the same transaction or occurrence."

---

[2] In their briefs, neither party specifies the exact date on which Fletcher filed his original lawsuit in Virginia state court; however, the parties do not appear to dispute that this suit was timely filed within the statute of limitations.

3

*Dunston v. Huang*, 709 F. Supp. 2d 414, 419-21 (E.D. Va. 2010) (citing Va. Code § 8.01-2(1) & Rule 1:6(a), Va. S. Ct.); *see also Hatfill v. New York Times Co.*, 416 F.3d 320, 335 (4th Cir. 2005) ("When [plaintiff] took a voluntary nonsuit in his original state-court action, he did so with respect to the set of operative facts underlying his complaint."); *Roller v. Basic Constr. Co.*, 238 Va. 321, 384 (1989) (defining a "cause of action" as "a set of operative facts which, under the substantive law, may give rise to one or more rights of action").

Because Fletcher's Section 1983 claim was filed within six months of nonsuiting his first state law claim, which concerned the same transaction or occurrence—his interaction with Jackson on July 25, 2020—this suit was timely filed.

### B.  Exhaustion of Administrative Remedies pursuant to the Prison Litigation Reform Act

Although Fletcher's complaint is timely, the Court cannot proceed to address the merits of his allegations because he failed to exhaust administrative remedies.

The Prison Litigation Reform Act ("PRLA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement has been "designed to reduce the quantity and improve the quality of prisoner suits" and to "afford[] corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 516–17 (2022). As such, "[t]here is no question that exhaustion is mandatory under the PLRA." *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (quoting *Jones v. Bock*, 549 U.S. 199, 211 (2007)). "And that mandatory language means a court may not excuse a failure to exhaust, even to take special circumstances into account." *Id*. (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)).

To be clear, however, an inmate "does not need to demonstrate exhaustion of

administrative remedies in his complaint." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) ("Inmates need not plead exhaustion, nor do they bear the burden of proving it."). Instead, "failure-to-exhaust is an affirmative defense that the defendant must raise." *Id.*; *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Jackson raises this affirmative defense in his Motion to Dismiss. He argues that a "review of the inmate file reveals that Fletcher did not file any grievance form related to the incident involving Corp. Jackson." Def. Mem. at 3. Jackson further alleges that Fletcher "filed two grievances during his multiple incarcerations at RRJ, and neither of them concern the incident involving Mr. Fletcher and Officer Jackson on July 25, 2020" and that Fletcher "also shut his own finger in his cell tray slot on March 8, 2021." *Id.* at 3-4. Jackson makes these assertions by citing to two exhibits attached to his Motion to Dismiss. Dkt. 7-3 at 3-4.

Fletcher argues that he "should have the opportunity to rebut Defendant's allegations with evidence of his own that any alleged failure to exhaust was due to unavailability of administrative remedies." Fletcher further argues that he "should be permitted to conduct discovery and gather evidence" to support his argument." Pl. Opp. at 9-10.

On a motion to dismiss with respect to failure to exhaust, courts "may consider additional documents attached to . . . the motion to dismiss so long as they are integral to the complaint and authentic . . . including the grievance attachment." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (cleaned up); *see also Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment.").

The key consideration, "where exhaustion is not apparent from an inmate's pleading," is that "the inmate is first given an opportunity to address the issue." *Custis*, 851 F.3d at 362 (quoting *Moore*, 517 F.3d at 725 (4th Cir. 2008)). And in *Moore*, the Fourth Circuit characterized Moore's

5

response to the defendant's motion to dismiss as "his opportunity to respond." *Id*.

Fletcher had an opportunity to respond to Jackson's allegations that he did not exhaust his administrative remedies, but he offered no substantive response. He did not submit an affidavit of his own challenging the authenticity of the grievances that Jackson attached to his Motion to Dismiss. Nor did he submit an affidavit claiming that he in fact submitted a relevant grievance that Defendant had not provided. Instead, in his opposition brief, Fletcher simply requested that the Court not consider the "extrinsic materials proffered by Defendant" and that the Court grant him discovery. Pl. Opp. at 9. But Fletcher has not provided any basis for discovery because he has not made any suggestion that administrative remedies were indeed unavailable to him, or that he in fact submitted a relevant grievance. *Id*. at 9-10.

Because Fletcher had an opportunity to respond to Defendant's exhaustion arguments, and he has failed to provide any substantial response, the Court finds that he failed to properly exhaust his administrative remedies. The Court therefore may not consider his claims at this time. *See* 42 U.S.C. § 1997e(a).

\*   \*   \*

Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's complaint is **DISMISSED** without prejudice.

The Clerk is directed to close this civil action.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

February 12, 2024
Alexandria, Virginia